## ANDERSON *v.* BROWN

1. CONTRACTS—CONSTRUCTION OF CONTRACTS—WORDS AND PHRASES—
AMBIGUITY—QUESTION OF FACT.

   Words that are clear in their meaning when standing alone
   in a contract often give rise to ambiguity when they are
   applied to a given set of facts, and this ambiguity in turn
   gives rise to a question of fact.

2. CONTRACTS—AMBIGUITY—CONSTRUCTION OF CONTRACTS—QUESTION
FOR JURY.

   A jury must determine what is the agreement between contract-
   ing parties where there is uncertainty in a written contract
   because of ambiguity or incompleteness, or technical words
   or terms of art.

3. INSURANCE—POLICY EXCLUSION—CONSTRUCTION OF CONTRACTS—
QUESTION OF FACT.

   Question whether house under construction was covered by a
   liability policy insuring the carpentry contractor but excluding
   property in the care, custody, or control of the insured or
   property as to which he is for any reason exercising physical
   control was one of fact for the jury where the evidence was
   that the owners of the house did some of the subcontracting
   themselves and that the house was nearing completion at the
   time it was destroyed by fire, because the jury could reason-
   ably have concluded that the house was not in the care,
   custody, or control of the insured at the time of the fire.

Appeal from Ottawa, Raymond L. Smith, J.   Sub-
mitted Division 3 January 8, 1970, at Grand Rapids.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  17 Am Jur 2d, Contracts §§ 240, 247.
[2]  17 Am Jur 2d, Contracts § 240.
[3]  43 Am Jur 2d, Insurance §§ 257, 265, 307, 311, 326.

(Docket No. 7,190.) Decided February 6, 1970. Leave to appeal denied September 22, 1970. 384 Mich 758.

Complaint by Robert A. Anderson and Chris T. Anton and Marian E. Anton, intervening plaintiffs, against George T. Brown and The Travelers Insurance Company for recovery under an insurance policy. Directed verdict for defendants. Plaintiffs appeal. Reversed and remanded.

*Stribley & Rude,* for plaintiff.

*Poppen, Street & Sorensen,* for intervening plaintiffs.

*Scholten & Fant,* for defendant The Travelers Insurance Company.

Before: V. J. Brennan, P. J., and R. B. Burns and T. M. Burns, JJ.

V. J. Brennan, P. J. This is an appeal from an order of the Ottawa county circuit court granting defendants' motion for directed verdict.

The plaintiff, Robert A. Anderson, is a housing contractor. In 1964 he obtained an insurance policy from defendant Travelers Indemnity Insurance Company for comprehensive general liability protection. The pertinent provisions of the policy read as follows:

*"Coverage B—Property Damage Liability*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

\*    \*    \*

## *"Exclusions*

"This Policy Does Not Apply:

                              *       *       *

"(h) under Coverage B, to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements covered by this policy, property used by the insured, or (3) except with respect to liability under such sidetrack agreements or the use of elevators or escalators at premises owned by, rented to or controlled by the named insured, *property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control,* or (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises;" (Emphasis added.)

In the same year, plaintiff finalized a contract with Chris and Marian Anton, the intervening plaintiffs, to do the carpentry work on a home the Antons wanted to build. On January 17, 1965, when the construction was about 75% completed, the home was destroyed by fire. Travelers denied coverage on the ground that the property destroyed was "in the care, custody or control of the insured" or was "property as to which the insured for any purpose is exercising physical control."

On February 25, 1965, the Antons started suit against Anderson in the circuit court for Muskegon county, alleging that the fire resulted from his negligence in using an extremely dangerous heating arrangement after being asked to discontinue its use because of the danger. This litigation has since concluded in a judgment against Anderson for $27,-597.48. On October 16, 1966, Anderson commenced

the present action for a declaratory judgment against Travelers in the Ottawa county circuit court. The Antons were granted leave to intervene as interested parties. The case was tried before a jury, but at the close of proofs the trial court granted the defendants' motion for a directed verdict, ruling that the language of the policy was clear and unambiguous and excluded coverage.

Plaintiffs point out that divergent views exist as to the meaning and proper application of the phrase "property in the care, custody or control of the insured", and that Michigan courts have not had occasion to deal with this phrase. But regardless of the rule the various courts purport to follow, the plaintiffs argue, it seems that the question whether the property is within the meaning of the above clause is one of fact to be resolved by the trier of fact, here the jury. The defendants maintain that a general contractor has "care, custody or control" of a house if he exercises general supervision over its construction, and that it makes no difference that the general contractor has retained the services of subcontractors to do various work. They cite *Boston Insurance Company* v. *Gable* (CA 5, 1965) 352 F2d 368, where a contractor was held to be in control, and *Volf* v. *Ocean Accident & Guarantee Corporation* (1958), 50 Cal 2d 373 (325 P2d 987), where the California Supreme Court held in favor of the insurance company, ruling that the home remained in the "care, custody or control" of the general contractor until the owner moved in.

Some courts hold the clause to be inherently ambiguous, *Elcar Mobile Homes, Inc.* v. *D. K. Baxter, Inc.* (1960), 66 NJ Super 478 (169 A2d 509) and *Boswell* v. *The Travelers Indemnity Company* (1955), 38 NJ Super 599 (129 A2d 250), while others have held the clause to be "clear and unambiguous."

See cases cited in 44 Am Jur 2d, Insurance, p 279, footnote 12, and 62 ALR2d, pp 1242–1254. Some courts have evolved fine distinctions between "possessory control" of property which is a "necessary element of the work involved" and property which is "merely incidental to the property upon which the work is being performed." See 62 ALR2d, pp 1245, 1246, 1248, 1251. In commenting on these distinctions, the court in *Elcar Mobile Homes, supra,* observed, at p 491:

"Equally unmanageable as a guide for decision is the attempted distinction between property damaged which 'is merely incidental to the property upon which the work is being performed by the insured' and property 'which is a necessary element of the work involved.' The distinction is easy to make verbally, but we conceive that, when it was applied to a given state of facts, the facts have governed, and not the verbalization. The alleged distinction rarely dictated the result; rather it justified it. The insured is entitled to rely upon what he reads in the policy. He is not expected to know the fine distinctions between realty and personalty, or to understand the nuances of 'care,' 'custody,' 'control,' or similar terms.   *   *   *   '[I]t must not be forgotten that the primary object of all insurance is to insure.' "

Words that are clear in their meaning when standing alone in a contract often give rise to ambiguity when they are applied to a given set of facts, and this ambiguity in turn gives rise to a question of fact. Michigan courts recognize the following rule in regard to ambiguity, 53 Am Jur, Trial, § 269, p 228:

"while it is true as a general rule that the construction of written contracts belongs to the court and not the jury, there are nevertheless cases in which

the ambiguous nature of the words used or an obscure reference to unexplained circumstances requires that the interpretation of the language be left to the consideration of the jury for the purpose of carrying into effect the real intention of the parties. It is for the jury to determine what is the agreement of the parties, where there is uncertainty in a written contract because of ambiguity or incompleteness, or technical words or terms of art. Likewise, where the nature of a contract is not clear, its interpretation may become a mixed question of law and fact, based upon the acts of the parties thereunder; and where a written contract has been modified by the practice under it, the question should be submitted to the jury under proper instructions,"

and leave the interpretation of an insurance contract and its applicability to the facts to the jury. *Clark* v. *Hacker* (1956), 345 Mich 751; *Barker* v. *Citizens' Mutual Fire-Insurance Co.* (1904), 136 Mich 626. The evidence adduced below discloses that the Antons did some of the subcontracting themselves, namely the heating, electrical work, plumbing and insulation. It was also established that work on the house at the time of the fire was nearing completion.

In light of these facts, the jury could have reasonably concluded, after determining the meaning of the words "care, custody or control," that the house was not in the "care, custody or control" of Anderson at the time of the fire. The meaning of these words gives rise to a question of fact, and that question should have been submitted to the jury.

Reversed and remanded, with costs to the plaintiffs.

All concurred.