BANWELL v. RISDON.

1. WORK AND LABOR—BUILDING CONTRACTS—EXTRAS.

Where change in contract for construction of one-story to two-story garage at additional cost rendered useless certain steel joists already ordered but not delivered, contractor is not entitled to recover cost thereof.

2. SAME.

Charge for pilaster piers, made necessary by change in plan and construction under subsequent contract, may not be charged as extra.

3. SAME.

Charge for steel window-sash, which should have been included in contract changing garage from one-story to two stories, is not allowed as extra.

4. SAME—PROOF.

Charge for additional tiling under change in contract is not allowed as extra, where there is no proof from which it may be determined.

5. SAME.

Contractor, who asked owner to select tile for vestibule, is not entitled to extra charge on ground that more expensive tile was selected than contract called for, where owner did not agree to pay extra therefor, and contractor did not object to selection.

6. CONTRACTS—BUILDING CONTRACTS—PROVISION FOR CHANGES IN WRITING DID NOT PREVENT ORAL CHANGES BY PARTIES.

Provision in building contract that all changes should be in writing did not prevent parties thereto from dealing otherwise by mutual consent.

7. SAME—BURDEN ON PARTY CLAIMING ORAL CHANGES.

Where building contract provided that all changes should be in writing, contractor has burden of establishing by convincing evidence that changes charged for and not authorized in writing were authorized by verbal agreement, inclusive of full understanding of call for payment thereof.

As to effect of stipulation that alterations or extras in building contracts must be in writing, see annotation in 66 A. L. R. 649.

8. WORK AND LABOR—BUILDING CONTRACTS—DAMAGES FOR DEFEC-
TIVE WORK AND MATERIAL.

    Damages assessed against contractor on account of defective
workmanship and material, *held,* supported by evidence.

Appeal from Wayne; Smith (Henry H.), J., presiding. Submitted January 28, 1932. (Docket No. 111, Calendar No. 35,918.)  Decided April 4, 1932.

Bill by Clarence W. Banwell against Albert Risdon and others to enforce a mechanic's lien. From decree rendered, plaintiff appeals. Modified and affirmed.

*Chester J. Morse,* for plaintiff.

*Chawke & Sloan,* for defendants.

WIEST, J.  The bill in this case was filed to enforce a mechanic's lien for labor and materials furnished in building an expensive residence and garages for defendants Risdon.  Defendant bank is a mortgagee and need not be further mentioned.  The parties entered into written contract, with later written modification, and plaintiff claims and charges for many extras ordered by defendants in writing and also verbally.  Defendants questioned many of the alleged verbal changes and set up an itemized list of defects, inclusive of poor workmanship and unsuitable material.  The circuit judge found there was due plaintiff the sum of $322.16, and directed foreclosure.  In reaching such amount the court cast an account between the parties, but without itemization, and found plaintiff had credits amounting to $7,754.36, and charged plaintiff with payments amounting to $3,028.65, and found the amount required to repair, replace, and make over defects to be the sum of $4,403.55.

Upon appeal plaintiff urges greater credits for extras and no allowance to defendants for claimed defects. The original contract called for a one-story garage, built to stand an added story if ever desired. In order to carry out this contract plaintiff ordered steel joists at a cost of $65, but, before delivery, the parties agreed upon a change to a two-story garage at additional cost, and the steel joists were useless. The cost of the agreed change was considerable, and plaintiff may not now add thereto the expense of the joists rendered useless by his subsequent written agreement. The item for $58 for pilaster piers, made necessary by change in plan and construction under subsequent contract, cannot be charged as an extra. The charge of $16 for labor and material for interior trim in the bathroom over the garage is disallowed.

The charge of $23.80 for steel window sash in garage and room above should have been included in the new contract or at least agreed upon by the parties. It is disallowed.

Many other small items are scheduled and were considered by the trial judge. They have been examined and are now mentioned and disposed of as follows:

Carpenter and labor in moving and restaking playhouse $11.25, allowed; foundation and footing material for playhouse $22, allowed. Many changes were made in the playhouse at the verbal request of Mrs. Risdon without discussion of cost, and the following items are allowed: Additional windows, $29.75; metal rods on roof, $6; installing switch from house to playhouse, $10; extra cost of plaster over wood ceiling in playhouse, $7. Extra cost of cement driveway caused by enlargement and change of location, $71.68, is allowed; additional fence on

rear lot and extra sodding, $106.58, is allowed; increase in size of terrace, $17.85, is allowed; removing extra dirt and regrading slope, $10, is disallowed; removing plaster above fireplace mantel and replastering, $4.88, is allowed; installing additional milk cabinet, $9.50, is disallowed; arranging storage space on third floor, $24.25, is allowed.

The contract called for "white tile in kitchen, full height of walls on all exposed portions," and "stove recessed with drop ceiling of tile over same." The stove was not recessed but placed with a tile hood over it, and plaintiff claims that this made extra carpenter work for which he charged $15, and the tile and placement thereof cost $265. The testimony on the last charge is not at all satisfactory. Plaintiff let the tiling of the whole house to a third party under a bid of $2,135, which was rebated to $1,900, and none of the rebate was allocated by plaintiff to tiling the hood, and, inasmuch as the contract required a drop ceiling of tile over the recessed stove, and this was changed and the cost thereof released, it should have reduced the charge for the extra tiling, if any. The $15 charge for carpenter work is allowed, and a reasonable charge for the additional tiling, being incapable of measurement under plaintiff's proofs, must be disallowed.

We find no agreement under which plaintiff can recover any extra expense for glazed tile with various inserts, colored to work out a pattern in the vestibule. Plaintiff asked Mrs. Risdon to pick out the vestibule tile and she did so. If she selected tile more expensive than the contract called for, then was the time for plaintiff to either object or ask for an agreement. Mrs. Risdon did not agree to any extra charges for the tile. This item is disallowed. This ruling applies to the item of $55, for more ex-

pensive tile in the front bathroom, and charges for special design in library windows, $36; special leaded glass in front vestibule closet window, $4, and special glass in door, vestibule to hall, $4.

It appears that plaintiff, before entering into contract with reference to the matters just mentioned, had not procured bids from dealers in glass. At the time of installation he had received a bid for the glass selected by Mrs. Risdon. The testimony on this subject does not convince us that defendants should pay these charges, and they are disallowed.

Two dollars and fifty cents for installing recess for telephone box is disallowed; $11.25 for extra shelves in clothes closet is disallowed; $2.50 charged for labor in installing "Olive-Knuckle butts" on a door is allowed; $5 for extra molding forming a paneling in the bedrooms is allowed; $60 for decorating additional plaster ornament, selected by defendants, is allowed. A credit for the mentioned allowed items amounts to $393.74, and to this we add the sum of $347.28 for changes, either admitted or not seriously questioned.

Defendants contend that changes, if any, claimed to have been verbally authorized cannot be allowed because of the following provision in the contract:

"It is agreed that all changes, which may add to the cost of the proposed residence, shall be agreed upon in writing prior to commencement and shall be added to the final payment due under this contract. An estimate of the cost is to be furnished for these extra items."

This was a wise provision, if lived up to, but did not prevent the parties thereto from dealing otherwise by mutual consent. It does, however, place upon plaintiff the burden of establishing by convincing evidence that changes charged for and not au-

thorized in writing were in fact authorized by verbal agreement, inclusive of full understanding of call for payment thereof. The circuit judge so held.

We do not have presented here the question of title in defendants by entireties, and, therefore, express no view upon need of a writing in such a case.

We now come to defective workmanship and material claimed by defendants. Upon this the circuit judge stated in an opinion:

"Altogether the defendants will have expended in this home on Cambridge road, exclusive of furnishings, upwards of $60,000.

"During the trial both sides insisted that the court make a personal inspection of the premises.

"Before going to look the premises over a detailed statement was taken as to defects claimed by the defendants and testified to by Mrs. Risdon.

"These were examined in their order and carefully checked, and it is the opinion of the court that the complaints she makes as to material and workmanship are not in the least exaggerated.

"Wherever one looks in and about the house there is evidence of slighted and poor workmanship and materials and an apparent disposition to cheapen the construction beyond reason.

"An enumeration of the various things plainly evident of which complaint is made would unduly lengthen this opinion. It must be found from the evidence that the defendants are clearly justified in their various claimed items of damage.    *    *    *

"Defendants offered testimony as to the amount required to repair, replace and make over defects: It is my opinion that the estimates are fair and reasonable."

The issue upon this subject, as usual, called for opinion testimony, and there was a wide variance between estimates given. The circuit judge, with such testimony in mind, at the request of counsel,

visited and viewed the premises, and we have not the benefit of such view. The damages assessed on account of defective workmanship and material are within the evidence, and we accept the findings made on this issue.

The account will then stand, balance due on the contract price $3,007.03; items admitted by defendants' answer or established by the proofs $254.95, and other items established $347.28, to which we add $393.74, for contested items established by the proofs, and other undisputed items, making a total of $8,730.18. Against which we charge payments amounting to $3,028.65, and $4,403.55, for defective material and workmanship, making a total of $7,432.20 and leaving a balance due plaintiff of $1,297.98.

We find that amount due plaintiff, and the decree will be modified to conform with such finding, and, as modified, affirmed. Plaintiff will recover costs of this court.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, and BUTZEL, JJ., concurred. FEAD, J., did not sit.